## IN THE UNITED STATES DISTRICT COURT FOR THE

## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **(1) DEBBIE L. THURBER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Case No.**  CIV-21-1052-C |
| | ) | |
| **(1) LIFE INSURANCE COMPANY OF** | ) | **ATTORNEY LIEN CLAIMED** |
| **NORTH AMERICA,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

Plaintiff Debbie L. Thurber, for her cause of action against Defendant Life Insurance Company of North America ("LINA"), alleges and states as follows:

### I.      Jurisdiction and Venue

1.      Plaintiff brings this action pursuant to the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001 *et seq*., to recover benefits due under an employee benefit plan, and to recover costs and attorney's fees as provided by ERISA.

2.      This Court has subject matter jurisdiction pursuant to 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331.  Under 29 U.S.C. § 1132(f), this Court has jurisdiction without regard to the amount in controversy or the citizenship of the parties.

3.      Venue is properly in this district pursuant to 29 U.S.C. § 1132(e)(2) because the breach took place in this district, and pursuant to 28 U.S.C. § 11391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in this district.

### II.      Parties and Plan

4.      Plaintiff is a sixty-four (64) year-old female. She resides in Tuttle, Oklahoma and within this judicial district.

5.      Plaintiff last worked as a Registered Nurse for Integris Health Inc. ("Integris") in

Oklahoma City, Oklahoma.

6.     LINA is a foreign insurance company having its principal place of business in Philadelphia, Pennsylvania. At all relevant times, LINA was licensed and authorized to sell insurance within the State of Oklahoma and it transacts business within the State of Oklahoma and within this judicial district.

7.     Integris provided long term disability ("LTD") insurance coverage to its eligible employees through a welfare benefit plan (the "LTD Plan").  At all relevant times, Plaintiff was eligible to participate in the LTD Plan, did participate in the LTD Plan, and was a participant in the LTD Plan within the meaning of 29 U.S.C. § 1002(7).

8.      The LTD insurance coverage applicable to Plaintiff was pursuant to a group LTD insurance policy issued by LINA, Policy Number FLK-0980225 (the "LTD Policy").

9.     The LTD Plan is administered by LINA, and benefits under the Plan are paid by LINA.  Benefit determinations with respect to Plaintiff's claim for LTD benefits under the LTD Plan are, and at all times relevant, were made by LINA.

10.      LINA was and is a LTD Plan fiduciary within the meaning of 29 U.S.C. § 1002(21)(A).

11.     According to the LTD Policy, LINA "will pay Disability Benefits if an Employee becomes Disabled while covered under this Policy" so long as the employee satisfies the Elimination Period, is under the Appropriate Care of a Physician, and meets all the other terms and conditions of the LTD Policy.

12.     The LTD Policy contains a "Proof of Loss" provision.  The provision does not state or define the quantum of evidence needed to establish disability.

13.     With respect to proving disability, the LTD Policy states that a claimant "must

provide the Insurance Company, at his or her own expense, satisfactory proof of Disability before benefits will be paid."

14.     The LTD Policy defines "**disability**" as follows:

The Employee is considered Disabled if, solely because of Injury or Sickness, he or she is:

1.  unable to perform the material duties of his or her Regular Occupation; and
2.  unable to earn 80% or more of his or her Indexed Earnings from working in his or her Regular Occupation.

After Disability Benefits have been payable for 24 months, the Employee is considered Disabled if, solely due to Injury or Sickness, he or she is:

1.  unable to perform the material duties of any occupation for which he or she is, or may reasonably become, qualified based on education, training or experience; and
2.  unable to earn 60% or more of his or her Indexed Earnings.

15.     The LTD Plan and related LTD Policy do not contain any provision wherein discretion is expressly reserved to LINA to determine benefit eligibility or entitlement.

16.     Accordingly, a *de novo* judicial review applies to Plaintiff's claim.

### III.     Allegations Applicable to All Claims

17.     Plaintiff began working for Integris in August 1991.

18.     Plaintiff elected the LTD coverage made available to her by Integris.  The "core" 40% benefit rate coverage was provided by Integris to Plaintiff at no cost.

19.     Plaintiff elected additional "buy-up" LTD coverage at a 60% benefit rate.

20.     Plaintiff last worked as a Registered Nurse for Integris on February 3, 2018. Plaintiff stopped working thereafter due to the combined effects of her several worsening conditions, including osteoarthritis (and related foot, hip, neck, and back pain), the non-union of the first metatarsophalangeal ("MTP") joint of the left foot subsequent to proximal interphalangeal

joint arthroplasty, and ulcerative colitis.

21.     Plaintiff's annual rate of pay at the time she last worked was $87,027.00. Accordingly, Plaintiff's last monthly wage rate was $7,252.25.

22.     Shortly after ceasing to work in February 2018, Plaintiff made a claim for short term disability ("STD") benefits.  Because LINA was the claim administrator to Integris' fully-insured STD plan, Plaintiff made her STD claim to LINA.

23.     LINA approved Plaintiff's STD claim for payment because her medical conditions, and related symptoms and limitations, precluded her from performing the medium strength-level duties of her nursing occupation.

24.     LINA paid STD benefits to Plaintiff from February 18, 2018 through August 4, 2018.

25.     As the STD claim period was drawing to a close, LINA transitioned Plaintiff's claim to its LTD claim handling function.

26.     A LINA nurse and doctor reviewed the accumulated claim file information and endorsed that Plaintiff's restrictions and limitations were supported by the medical information. The nurse and doctor further endorsed that Plaintiff's conditions, symptoms, and related limitations, precluded her from performing the duties of her own occupation.

27.     By letter dated October 29, 2018, LINA advised Plaintiff that her LTD claim was approved.

28.     In February 2019, the Social Security Administration ("SSA") found that Plaintiff was totally disabled and entitled to Social Security Disability Income ("SSDI") benefits.

29.     In pertinent part, the SSA found Plaintiff had the following severe impairments: dysfunction - major joints, degenerative disc disease, and inflammatory bowel disease.

30.     The SSA also found that Plaintiff's medical conditions interposed exertional restrictions and limitations which rendered Plaintiff unable to perform her own occupation.

31.     The SSA additionally found that Plaintiff did not have sufficient transferable skills to be gainfully employed in a less physically demanding occupation.

32.     In March 2020, LINA notified Plaintiff it was beginning an "any-occupation" review pursuant to the impending change in the LTD Policy's definition of disability.

33.     In relation to the "any-occupation" review, LINA pursued updated medical records and information from Plaintiff's treating physicians.

34.     LINA received updated information and records from Dr. Shawn Bridwell. Therein, Dr. Bridwell opined that Plaintiff had restrictions and limitations due to severe osteopenia of her lower lumbar spine. Dr. Bridwell endorsed that Plaintiff could sit frequently (up to 5.5 hours of an 8-hour workday), stand/walk occasionally (up to 2.5 hours per workday), could occasionally lift/carry/push/pull (but only up to 5 pounds), and never lift/carry/push/pull in excess of 5 pounds.

35.     Dr. Bridwell's records for the period from October 2019 through late April 2020 evidenced and confirmed Plaintiff's consistent reporting of hip, back, and neck pain and related medication management for pain.

36.     LINA received updated information and records from Plaintiff's treating gastroenterologist, Dr. Ross Keener.  Therein, Dr. Keener endorsed that Plaintiff's diagnoses were ulcerative colitis, fecal incontinence, and nausea/vomiting.

37.     Dr. Keener explained the factors affecting Plaintiff's ability to work as follows:

severe nausea and vomiting that can occur for 24 hours, accidents that interfere [with] daily activities & duties & incapacitating her from work 1-2 days.

38.     Finally, Dr. Keener opined that Plaintiff's conditions and symptoms interposed a specific restriction – Plaintiff needed to be near a bathroom.

39.     In May 2020, LINA determined that an Independent Medical Examination ("IME") done by an orthopedic physician would be helpful to its any-occupation review.

40.     Dr. Christopher Jordan conducted the IME in June 2020 and prepared a report. As reflected in Dr. Jordan's report, he conducted a physical examination limited solely to evaluating Plaintiff's feet. Dr. Jordan did not examine or assess Plaintiff with respect to her osteoarthritis and the related pain and limitations in her hips, back, and neck.

41.     Dr. Jordan opined that Plaintiff could sit constantly (up to 2/3 of an 8-hour workday), stand/walk occasionally (up to 2.5 hours per workday), could occasionally lift/carry (but only up to 5 pounds), and never lift/carry/push/pull in excess of 5 pounds.

42.     Dr. Jordan's report, however, did not acknowledge or consider the impact, if any, that Plaintiff's gastrointestinal conditions and symptoms might have on Plaintiff's work functionality.

43.     Dr. Jordan's report did not address Plaintiff's ability to sustain work focus and concentration sufficient to be on-task while at work when suffering from unpredictable bouts of nausea/vomiting and fecal incontinence.

44.     On July 13, 2020, a LINA vocational employee prepared a "transferable skills analysis" ("TSA") based on Dr. Jordan's opinions. The vocational employee concluded that Plaintiff was able to perform the material duties of two sedentary occupations – Telephonic Triage Nurse (DOT 075.364-010) and Director, Nurses' Registry (DOT 187.167-034).

45.     The conclusions of the TSA are wrong in view of the requirements of sedentary work and Plaintiff's undisputed lift/carry/push/pull restrictions.

46.     Sedentary-level work requires the ability to exert up to 10 pounds of force occasionally to lift, carry, push, pull, or otherwise move objects. [*See* Dictionary of Occupational

Titles, Appendix C, https://occupationalinfo.org/ appendxc_1.html (last visited October 22, 2021).]

47.    And, as noted above, Drs. Bridwell and Jordan both endorsed that Plaintiff could never lift/carry/push/pull in excess of 5 pounds.

48.    Further, the TSA was materially flawed and incomplete. The TSA did not consider Plaintiff's need to be near a bathroom due to unpredictable bouts of severe nausea/vomiting and fecal incontinence-related accidents. And it failed to consider whether Plaintiff's chronic hip, back, and neck pain might impair her work focus/concentration and cause poor work attendance, i.e., dependability problems.

49.    Notwithstanding the shortcomings of the TSA, LINA moved to terminate Plaintiff's LTD claim.  By letter dated July 16, 2020, LINA notified Plaintiff that it was denying her LTD claim under the "any-occupation" definition and no benefits beyond August 4, 2020 would be paid.

50.    Plaintiff appealed LINA's decision by letter dated January 20, 2021 and submitted additional information and medical records.

51.    On appeal, Plaintiff submitted the results of an MRI done on July 11, 2019.  The MRI confirmed degenerative changes in the cervical spine resulting in mild spinal canal stenosis at C5-C6 and mild scattered foraminal narrowing.  The MRI further confirmed mild degenerative changes in the lumbar spine without significant spinal canal or foraminal stenosis.

52.    Plaintiff submitted a Dexa Scan Report on testing done October 14, 2019.  The results confirmed an osteoporosis diagnosis.

53.    Plaintiff also submitted 2019 and 2020 office visits notes reflecting her care and treatment by Dr. Priya Prakesh. Dr. Prakesh's records evidenced and confirmed Plaintiff's

consistent reporting of chronic and worsening pain in her joints, neck, and hips, weakness, and impaired range of motion. The records confirmed Dr. Prakesh's abnormal findings on physical examination.

54.     The radiology reports included among Dr. Prakesh's records confirmed, with respect to Plaintiff's hands, "degenerative changes with joint space narrowing and osteophytosis at some of the visualized joints." The radiology reports regarding Plaintiff's hips confirmed "degenerative changes at the bilateral sacroiliac and hip joints and pubic symphysis."

55.     Dr. Prakesh concluded that the radiology reports evidenced degenerative joint disease.

56.     In support of her appeal, Plaintiff submitted medical records reflecting her pain management treatment in 2019 and 2020 with Dr. Badie Mansour.

57.     Dr. Mansour's records evidenced and confirmed Plaintiff's consistent reporting of neck pain, tingling in her upper extremities, and low back, mid back, and right hip pain. The records confirmed Dr. Mansour's abnormal findings on physical examination and that he administered interspinous ligament trigger point injections on three occasions in an effort to mitigate Plaintiff's pain.

58.     As part of her appeal, Plaintiff submitted the medical records of Dr. Keener for the period August 2020 through October 2020.  The records confirmed Plaintiff's continuing treatment with Dr. Kenner for digestive health issues and her reports about abdominal pain/cramps, nausea/vomiting, diarrhea, and gastroesophageal reflux disease ("GERD").

59.     Plaintiff also submitted the medical records of the various family practice providers she saw at the Purcell Indian Health Clinic from February 10, 2020 through December 8, 2020. Those records evidenced and confirmed Plaintiff's continuing treatment for her various medical

conditions and symptoms, including nausea/vomiting, and chronic neck, back, and hip pain.

60.     Finally, in her appeal letter, Plaintiff criticized the TSA's conclusion she could perform the sedentary physical demands of the two occupations referenced in the TSA.  Plaintiff noted that per the DOT, sedentary-level work requires the ability to exert up to 10 pounds of force occasionally to lift, carry, push, pull and Drs. Bridwell and Jordan both opined she can never lift/carry/push/pull over 5 pounds.

61.     In response to Plaintiff's appeal and submissions, LINA requested "file reviews" on Plaintiff's LTD claim from LINA-employed "medical directors" – a rheumatologist, an occupational medicine doctor, and a psychiatrist.

62.     The requested file reviews were done by Dr. Angelica Shepard, Dr. Roger Belcourt, and Dr. Elbert Greer Richardson.

63.     In pertinent part, Drs. Shepard and Belcourt endorsed lift/carry/push/pull restrictions that were materially different than those endorsed by Drs. Bridwell and Jordan.  Dr. Shepard opined Plaintiff could lift/carry/push/pull up to 15 pounds occasionally. Dr. Belcourt opined Plaintiff could lift/carry/push/pull up to 10 pounds occasionally.

64.     Drs. Shepard and Belcourt never treated or examined Plaintiff.

65.     Drs. Bridwell and Jordan treated and/or examined Plaintiff.

66.     By letter dated April 6, 2021, LINA notified Plaintiff that it had determined to uphold its adverse determination on her LTD claim based on the file reviews done by Drs. Shepard, Belcourt, and Richardson. The LINA letter, however, invited Plaintiff to provide a response to its impending adverse determination.

67.     Plaintiff provided a response by letter dated April 13, 2021. Plaintiff explained how the file review done by Dr. Belcourt, an occupational medicine doctor, in relation to Plaintiff's

digestive health issues reflected an unprincipled review.  Plaintiff complained that Dr. Belcourt is not a digestive diseases specialist and, therefore, not qualified to assess the severity of her ulcerative colitis, fecal incontinence, and nausea/vomiting and the logical work limitations interposed.

68.     Plaintiff further advised LINA she had additional medical records and information to submit. The information regarded Plaintiff's hospitalization from February 3, 2021 through February 9, 2021 due to a flare of severe nausea and vomiting and the additional diagnosis of Cyclic Vomiting Syndrome ("CVS").

69.     Plaintiff requested an extension of time to perfect her LTD claim appeal in order to obtain and submit the hospitalization-related records.

70.     By letter dated May 11, 2021, Plaintiff submitted the additional medical records.

71.     The records evidenced and confirmed Plaintiff's debilitating digestive health issues, severe nausea, vomiting, and diarrhea.

72.     In submitting the additional records, Plaintiff urged that her chronic unpredictable bouts of diarrhea, nausea, and vomiting precluded her from attending work on a frequency and consistency sufficient to satisfy an employer.

73.     In July 2021, LINA notified Plaintiff that it had again determined to uphold its adverse determination on her LTD claim.  LINA's determination was based on a new file review done by a gastroenterologist, Dr. Rajeshwar Kadian.  The decision was also based on the previous file reviews done by Dr. Shepard and Dr. Belcourt, along with each doctor's respective addendum comments made in June 2021.

74.     Dr. Kadian never treated or examined Plaintiff.

75.     The opinions of Dr. Kadian and Dr. Belcourt were used as inputs for another LINA-

conducted TSA, which was done on June 30, 2021. According to the TSA, Plaintiff was able to perform the material duties of two sedentary occupations – Coordinator Volunteer Services (DOT 187.167-022) and Director, Nurses' Registry (DOT 187.167-034).

76.      Plaintiff provided a written response to LINA's letter and information about its impending adverse decision. She explained that Dr. Kadian's file-review was seriously inconsistent and flawed because: (1) Dr. Kadian expressed agreement with Dr. Keener's opinions and assessments but, inconsistently, endorsed that Plaintiff had the ability to work at the light level; and (2) Dr. Kadian limited his focus about Plaintiff's debilitating health issues to her GERD diagnosis and did not assess Plaintiff's other GI-related issues – cyclic vomiting syndrome, ulcerative colitis, fecal incontinence, and nausea.

77.      Plaintiff also noted in her response that Dr. Kadian did not address whether any non-exertional limitations resulted from her digestive disease conditions.

78.      In that regard, as may be seen upon review of his report, Dr. Kadian did not comment on Plaintiff's ability to sustain work focus and concentration sufficient to be on-task while at work when suffering from unpredictable bouts of nausea, vomiting, and fecal incontinence.  And, Dr. Kadian did not consider or address whether Plaintiff, in view of her chronic unpredictable bouts of diarrhea, nausea, and vomiting, could attend work on a frequency and consistency sufficient to satisfy an employer.

79.      With respect to Dr. Belcourt's addendum comments made on June 9, 2021, he opined that Plaintiff "would require bathroom accommodations due to ulcerative colitis with diarrhea, up to 4-5 BM's per day."  Dr. Belcourt's indicated Plaintiff needed to work "within 300 feet of a restroom facility" and be permitted to take "bathroom breaks up to 5 times a day, 10 minutes each."

80.     Dr. Belcourt's addendum, however, did not address whether Plaintiff could sustain work focus and concentration sufficient to be on-task while at work when suffering from unpredictable bouts of severe nausea, vomiting, abdominal pain/cramps, and diarrhea.

81.     Dr. Belcourt's addendum, however, did not address whether Plaintiff could attend work with a frequency and consistency sufficient to satisfy an employer in the national economy where her digestive health issues can occur for 24 hours and be incapacitating for up to two consecutive days.

82.     And in her written response to LINA, Plaintiff also noted the flaws and shortcomings of the TSA done on June 30, 2021. In particular, Plaintiff noted the TSA conclusion – that the two occupations allowed for "restroom breaks as needed" – was unsupported by any evidence.

83.     Plaintiff further disputed the "clerical" job assumption underlying the TSA's conclusion because, in fact, the two occupations Plaintiff could *purportedly* perform are management-level occupations.  The duties of both entail "directing, controlling, or planning activities of others" and "dealing with people."

84.     Plaintiff can't direct, control, and plan the activities of others – and deal with those same people in the process – while in the bathroom five times a day for almost an hour.

85.     Plaintiff can't direct, control, and plan the activities of others – and deal with those same people in the process – while off-task and unable to focus/concentrate because her digestive health symptoms are worsening and about to force her into the bathroom.

86.     By letter dated October 1, 2021, LINA fully and finally denied Plaintiff's appeal. The denial rationale stated therein substantially tracked the file-review assessments of Drs. Belcourt, Kadian, and Shepard and the TSA conclusions based on Drs. Belcourt and Kadian's

opinions.

87.     The file reviews done by Drs. Belcourt, Kadian, and Shepard were each, in their own ways, material flawed and not substantial evidence supporting the denial of Plaintiff's LTD claim.

88.     The TSA underlying LINA's final decision was materially flawed and the conclusions set out in the TSA are wrong, conclusory, and not supported by competent evidence. The TSA done on June 30, 2021 is not substantial evidence supporting the denial of Plaintiff's LTD claim.

89.     In denying Plaintiff's LTD claim beyond August 4, 2020, LINA conducted a skewed and self-interested investigation and evaluation of Plaintiff's claim, failed to apply the terms of the applicable LTD Plan and LTD Policy to Plaintiff's claim, mischaracterized record information and cherry-picked record information which might lend to support a claim denial while de-emphasizing or disregarding information supportive of Plaintiff's claim, failed to consider whether Plaintiff could perform the non-exertional duties of any-occupation she was purportedly qualified for, unreasonably relied on the opinions of file-reviewing physicians who never observed or examined Plaintiff and who conducted materially flawed and incomplete reviews, and unreasonably relied on a TSA that was materially flawed, conclusory, and not supported by competent evidence.

90.     Plaintiff has exhausted her administrative remedies.

### IV.     Statement of Claims

### First Claim

### ERISA – Improper Denial of Benefits

91.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1

through 90 of this Complaint as though set forth at length herein and further alleges:

92.     At all relevant times, the terms of the LTD Plan and LTD Policy required payment of LTD benefits to Plaintiff due to her debilitating impairments.

93.     LINA's failure to pay LTD benefits to Plaintiff beyond August 4, 2020 is contrary to the terms of the LTD Plan, and is wrong, incorrect, and/or arbitrary and capricious.

94.     In determining Plaintiff's claim, LINA failed to provide her with a full and fair review as required by law, thereby making its final adverse claim decision wrong, unreasonable, and not supported by competent and substantial evidence.

95.     Plaintiff seeks a declaration from this Court that she is entitled to the LTD benefits due her under the terms of the LTD Plan and LTD Policy, in the amounts and for the duration consistent with the terms of the LTD Plan and LTD Policy, and an Order that all future disability benefits (and related other employee benefits, if any) should be paid and/or maintained pursuant to the terms of the LTD Plan and LTD Policy.

96.     Alternatively, Plaintiff seeks a declaration from this Court that LINA's final claim decision is not the product of a full and fair review, and a related Order therefore reinstating her LTD claim, and remanding the matter to LINA for a full and fair review.

97.     By reason of LINA's wrong, unreasonable, and/or arbitrary and capricious claim decision, Plaintiff has been forced to retain an attorney to secure the LTD benefits due her under the terms of the LTD Plan, for which Plaintiff has and will incur attorney fees and costs of this action pursuant to 29 U.S.C. § 1132(g)(1).  Plaintiff is entitled to recover the reasonable attorney fees and costs of this action pursuant to 29 U.S.C. § 1132(g)(1).

**WHEREFORE**, Plaintiff Debbie L. Thurber demands judgment against Defendant Life Insurance Company of North America, as follows:

-14-

(1)      for a declaration that LINA improperly terminated her LTD benefits, and that she is entitled to receive the amount of benefits due under the terms of the LTD Plan that have not been paid, together with prejudgment and post-judgment interest thereon;

(2)      for a declaration that all future long term disability benefits and related other employee benefits, if any, be paid and/or maintained pursuant to the terms of the LTD Plan; and/or

(3)      for a declaration that LINA improperly terminated her LTD benefits and denied her a full and fair review, and that as a consequence thereof, her claim should be reinstated and remanded for further claims procedures;

(4)      for the costs of this action and Plaintiff's attorney fees pursuant to 29 U.S.C. § 1132(g); and

(5)      for such other and further relief as may be deemed just and proper by the Court.

**Respectfully submitted,**

**SHOOK & JOHNSON, P.L.L.C.**

**By:**      **s/ Jonathan E. Shook**
**Jonathan E. Shook, OBA #17343**
**7420 S. Yale Ave.**
**Tulsa, OK 74136**
**Telephone:  (918) 293-1122**
**Facsimile:   (918) 293-1133**

**ATTORNEY FOR PLAINTIFF**